UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RICHARD JOHNS,

                        Plaintiff,

      v.

WINNERS CIRCLE ENTERTAINMENT, INC.
AND WINNERS CIRCLE MERCHANDISE, INC.,

                        Defendant.

**MEMORANDUM AND ORDER**

22-CV-4174 (LDH) (CLP)

---

LaSHANN DeARCY HALL, United States District Judge:

    Plaintiff Richard Johns brings the instant action against Defendants Winners Circle Entertainment, Inc. and Winners Circle Merchandise, Inc. alleging violations of the Lanham Act and New York General Business Law § 360. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint for failure to state a claim.

### BACKGROUND[1]

    Plaintiff operates Winners Circle Publishing LLC, a music publishing company that provides management, production, and publishing services. (Am. Compl. ¶ 18, ECF No. 22.) Since 2011, Plaintiff has offered and sold services under a portfolio of marks that include Winners Circle Music, for which Plaintiff has obtained U.S. Trademark registration. (*Id.* ¶¶ 18, 20.) Plaintiff also asserts extensive common-law rights over Winners Circle Publishing and Winners Circle Publishing WC because he has maintained a significant Internet presence since 2015, including a website and social media accounts that prominently display these marks. (*Id.*

---

[1] The following facts are taken from the Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

¶¶ 2, 22, 26.)[2]  Moreover, Plaintiff has invested significant resources into promoting and marketing the Winners Circle marks.  (*Id.* ¶ 3.)  Plaintiff's services and expertise are recognized across the music industry given Plaintiff's work on 84 platinum records, 43 gold-certified singles, and 55 Billboard #1 records.  (*Id.* ¶ 1.)  Through his company, and while using the Winners Circle marks, Plaintiff has worked directly with artists like Nicki Minaj, Jack Harlow, DaBaby, Bad Bunny, and Big Sean.  (*Id.*)

Defendants also offer music production and publishing services and use multiple marks that Plaintiff claims are identical or confusingly similar to the Winners Circle marks.  (*Id*. ¶¶ 30–31.)  Plaintiff alleges that Defendants' counsel, Jeffrey Wooten, had prior business dealings with Plaintiff dating back to 2015 and knew of Winners Circle Publishing LLC and its affiliated marks.  (*Id*. ¶¶ 42, 58.)  In 2021, when Plaintiff applied to register the Winners Circle Publishing WC design mark, Defendant Winners Circle Entertainment filed a notice of opposition citing a likelihood of confusion between Plaintiff's Winners Circle Publishing WC and design mark and Defendants' Winners Circle Entertainment and Winners Circle Entertainment Publishing marks.  (*Id*. ¶¶ 40–41.)  Defendants do not intend to stop using Winners Circle marks.  (*Id*. ¶ 44.)  Plaintiff alleges that the reputation of his business will suffer irreparable harm based, in part, on the May 2023 indictments of two of Defendants' principals, Sheff G and Sleepy Hallow, for second-degree murder and conspiracy.  (*Id*. ¶ 45.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[2] Plaintiff also operates Winners Circle/I Am Studios, which provides studio and office space to industry professionals.  (Am. Compl. ¶ 27.)

(2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

The Lanham Act was designed to "eliminate the confusion that is created in the marketplace by the sale of products [or services] bearing highly similar marks." *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 (2d Cir. 2005). To state a claim of trademark infringement under Section 43(a) of the Lanham Act, a plaintiff must show (1) that it has a valid mark that is entitled to protection under the Act, and (2) that use of the defendant's mark infringes, or is likely to infringe, the plaintiff's mark, creating a likelihood of confusion. *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020).[3] The Court first analyzes Plaintiff's claims arising from its registered trademark, "Winners Circle

---

[3] Courts in this circuit typically employ substantially similar standards to analyze claims for trademark infringement and false designation of origin under the Lanham Act and claims for trademark infringement or unfair competition under New York common law. *VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 365 (E.D.N.Y. 2014) (Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act . . . false designation of origin under the Lanham Act . . . trademark infringement under New York common law; and unfair competition under New York common law); *see also Est. of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011) ("Unfair competition claims under New York common law are governed generally by the same standards as Section 43(a) of the Lanham Act, except the common law requires a showing of bad faith or intent"). Accordingly, the Court analyzes together whether Plaintiff states a claim under the Lanham Act or New York common law.

3

Music," and then proceeds to analyze its claims arising from its unregistered purported "Winners Circle" marks.

## I. Registered Mark – Winners Circle Music

A mark that is registered with the United States Patent and Trademark Office and continuously used for five years is presumptively valid and entitled to protection. *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, No. 22-713-cv, 2022 WL 17175400, at *1 (2d Cir. Nov. 23, 2022) (citation omitted). Thus, the sole question regarding a trademark infringement claim as to a registered mark is whether the plaintiff has plausibly alleged a likelihood of confusion. *See id.* Here, Defendants argue that Plaintiff's claims as to the registered "Winners Circle Music" mark should be dismissed because Plaintiff fails to allege a likelihood of confusion between the registered mark and Defendants' marks. The Court agrees.

"The well established benchmark for trademark infringement under the Lanham Act is likelihood of confusion." *777388 Ontario Ltd. v. Lencore Acoustics Corp.*, 105 F. Supp. 2d 56, 63 (E.D.N.Y. 2000) (citation omitted). In assessing whether a plaintiff has sufficiently alleged a likelihood of confusion, federal courts in this circuit consider the eight factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the marks; (3) the competitive proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) evidence of actual consumer confusion; (6) whether the defendant acted with bad faith; (7) the quality of defendant's product; and (8) consumer sophistication (287 F.2d 492, 495 (2d Cir. 1961)). *MidCap Bus. Credit, LLC*, 2022 WL 17175400, at *1 (holding that courts in the Second Circuit consider the *Polaroid* factors to determine whether a plaintiff has alleged likelihood of confusion). The *Polaroid* test is not meant to facilitate a tallying process where the party with

4

the greatest number of factors in its favor wins. *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 584 (2d Cir. 1993). Instead, courts are directed to focus on the ultimate question of whether consumers are likely to be confused. *Id.* Importantly, it is not enough for a court to find a mere possibility of confusion. *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993). Instead, a plaintiff must allege that confusion is probable. *Id.*

### A. Strength of Mark

To gauge a mark's strength, the Court considers (1) its inherent distinctiveness and (2) its marketplace distinctiveness. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998). In assessing inherent distinctiveness, courts assign marks one of the following categories, listed in ascending order of distinctiveness: generic, descriptive, suggestive, or arbitrary. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). A generic term is a common name that merely describes a kind of product, *Gruner*, 991 F.2d at 1075, and a mark is descriptive if it conveys an immediate idea of the qualities or characteristics of the goods or services. *Abercrombie & Fitch Co.*, 537 F. 2d at 11 (citation omitted). While generic terms are never designated as strong, descriptive terms may be so designated where the plaintiff makes a showing that the mark has acquired secondary meaning. *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999). Next in the line of distinctiveness are suggestive marks, which require some degree of inference for a consumer to ascertain the nature of the goods or services. *Abercrombie & Fitch Co.*, 537 F. 2d at 11. Finally, the most distinctive, arbitrary marks apply a common word in an unfamiliar way. *Lane Cap. Mgmt.*, 192 F.3d at 344. Defendants contend that Plaintiff's marks are weak because they lack both inherent and

5

marketplace distinctiveness.  (Mem. Of L. in Supp. Of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 19–20, ECF No. 37.)  The Court agrees.

As a threshold matter, "Winners Circle Music" is a registered mark and is thus entitled to a presumption of inherent distinctiveness.  *See Gruner*, 991 F.2d at 1077 (finding that a "descriptive registered trademark was correctly found to be [presumptively] strong").  But the presumed distinctiveness of a "registered trademark [can] be overcome by the use of a descriptive or weak portion of the mark." *Id.*  And, in the Second Circuit, the leading view is that self-laudatory terms, or those that describe the merits of a product or service, are descriptive and thus not entitled to protection absent secondary meaning.  *See, e.g.*, *Murphy v. Provident Mut. Life. Ins. Co. of Phila.*, 923 F.2d 923, 927 (2d Cir.1990) ("Marks that are laudatory and that describe the alleged qualities or characteristics of a product or service are descriptive marks"); *PaperCutter, Inc. v. Fays Drug* Co., 900 F.2d 558, 563 (2d Cir.1990) (noting that terms "indicating the . . . merits of a product" are descriptive); *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 443–44 (S.D.N.Y. 2016) (identifying "'Best,' 'Supreme,' 'Quality,' 'Premier,' 'Exquisite,' [and] 'Famous'" as self-laudatory, and therefore, descriptive terms).  As Defendants argue, "Winners Circle Music" is merely descriptive, as it is a self-laudatory phrase meant to indicate the merit of Plaintiff's brand.  (Defs.' Mem. at 13–14.)  That the dictionary defines "winners circle," as "an area where the winner of a game, contest, etc., receives his or her award"[4] undergirds Defendants' argument.  Indeed, a consumer who encounters the term "winners circle" in combination with an entertainment industry noun can immediately grasp the type and merit of services that Plaintiff offers.  And, the addition of a generic industry noun, such as "entertainment" or "publishing," does not render the term

---

[4] *Winner's Circle*, The Britannica Dictionary, https://www.britannica.com/dictionary/winner%27s-circle (last visited December 9, 2024.)

6

"winners circle" any more distinct.  In ineffective rebuttal, Plaintiff merely reiterates the presumed inherent distinctiveness of the registered "Winners Circle Music" mark.  (Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n.") at 6, ECF No. 38).

As to marketplace distinctiveness, Defendants argue that Plaintiff's pleadings amount to no more than conclusory allegations regarding Plaintiff's investment in the marks and consumer recognition.  (Defs.' Mem. at 15.)  The Court agrees.  To assess marketplace distinctiveness, courts in this circuit look to evidence of the mark's secondary meaning – that is, the extent to which the public identifies the mark with a particular product.  *Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 704 (E.D.N.Y. 2018).  In determining secondary meaning, courts should consider:  (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use.  *Centaur Commc'ns v. A/S/M Commc'ns*, 830 F.2d 1217, 1222 (2d Cir.1987), *overruled on other grounds by Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 585 (2d Cir.1993).

Plaintiff's pleadings as to the marketplace distinctiveness of "Winners Circle Music" are unavailing.  With respect to advertising expenditures, consumer surveys linking the mark to a source, length and exclusivity, and sales success, Plaintiff plainly states that he invested "substantial[ly]" in advertising, which contributed to consumer recognition, and "derived significant revenue from his sale of services," (Am. Compl. ¶ 28) but includes no facts to support these assertions.  Such conclusory statements are insufficient to plausibly plead marketplace distinctiveness.  *See Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017) (finding that "plaintiff's allegation about its substantial investment in 'promoting, advertising and soliciting sales' is nothing more than a conclusory statement devoid of factual content that

does not pass muster under *Iqbal*"). Similarly, Plaintiff states that he has used different unregistered variations that incorporate "winners circle" since approximately 2011. (Am. Compl. ¶ 2.) But Plaintiff fails to plead, nor could he, that his use of "winners circle" or even "Winners Circle Music" has been exclusive. And the Complaint is devoid of any mention of unsolicited media coverage of the registered Winners Circle Music mark. Accordingly, the market distinctiveness factor favors Defendant. Considered alongside the Court's assessment of inherent distinctiveness, Plaintiff plainly fails to plead that the Winners Circle Music mark is strong.

### B. Similarity of the Marks

In assessing similarity of marks, courts look to the overall impression created by the marks and the context in which they are found to consider the totality of factors that could cause confusion among prospective consumers. *Gruner*, 991 F.2d at 1078. In doing so, courts consider aspects such as "the products' sizes, logos, typefaces, and package designs." *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993). Defendants argue that, despite some common elements, there are significant differences between the parties' marks that leave consumers with different overall impressions. (Defs.' Mem at 20–21.) The Court agrees. Here, as Defendants argue, despite the textual overlap, the marks are generally dissimilar. Plaintiff alleges that Defendants employ "identical" marks and names that are "highly similar," which could confuse the public. (Am. Compl. ¶ 68.) But Plaintiff relies too heavily on the shared "winners circle" term or "WC" abbreviation employed in both parties' marks, which are arranged in a circular shape. Plaintiff does not address the marks' key differences, which include different fonts: cursive compared to block letters; distinct designs: a seal compared to laurel wreaths; and different colors: black letters on a white background compared to white and grey

8

letters on a black background. (Defs.' Mem. at 20.) The few similarities that Plaintiff emphasizes do not overcome the differences between the marks, which contribute to overall impressions that are distinct enough to preempt any potential for confusion. *See E.A. Sween Co., Inc. v. A & M Deli Express Inc.*, 787 F. App'x 780, 784 (2d Cir. 2019) (holding that the magistrate judge appropriately found two marks that portrayed the same words dissimilar where they employed different fonts, colors, and arrangements, which would "be memorable enough to dispel confusion on serial viewing") (citation omitted); *see also Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 490–91 (S.D.N.Y. 2004) (finding that even marks that were orally identical were not similar because they did "not create the same overall impression" because "the fonts, colors and emblems [were] not alike); *Le Book Pub., Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 312 (S.D.N.Y. 2005) (dismissing trademark infringement claims because "[t]he cumulative effects of the dissimilarity of the marks and the form, look and feel of the directories dispels any confusion consumers might have"). Accordingly, this factor, too, favors Defendants.

### C. Proximity of Products

In assessing proximity of the products, courts consider "whether and to what extent the two products compete with each other." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996). Specifically, a court may consider the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold. *Id.* The competitive proximity factor has two elements: market proximity and geographic proximity. *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 134 (2d Cir. 2004). While market proximity describes whether the two products are offered in related areas of commerce, geographic proximity refers to the geographic separation of the products. *Id.* Both

9

elements seek to assess whether the two products have an overlapping client base that creates a potential for confusion. *Id.*

Here, the parties do share close market proximity. Nonetheless, Defendants argue that the parties' areas of commerce are dissimilar. (Defs.' Mem. at 21–22.) Specifically, Defendants argue that while they operate as a record label and merchandise seller, Plaintiff operates a music publishing business. (*Id.*) The Court is unpersuaded. Defendants direct the Court's attention to cases in which a shared industry was insufficient to establish market proximity. *See e.g., Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 305–06 (S.D.N.Y. 2021) (finding that parties did not have "close market proximity" because "[w]hile they are both restaurants, they are different types of restaurants . . . [t]he parties cater to different desires and audiences."); *Sunenblick v. Harrell*, 895 F. Supp. 616, 629 (S.D.N.Y 1995) (finding that although both parties sold records, they did not have the same consumers because one sold jazz records and the other sold hip-hop records). These cases are not helpful where, as here, the parties not only offer similar services but operate within identical genres. As Plaintiff pleads, and as Defendants acknowledge, both parties work with hip-hop artists. (Am. Compl. ¶ 1) (stating that Plaintiff has worked with hip-hop rap artists Nicki Minaj, Jack Harlow, DaBaby, Bad Bunny, and Big Sean); (*Id.* ¶ 45) (identifying Defendants' principals as hip-hop artists Sheff G and Sleep Hallow); (Defs.' Mem. at 5) (noting that Defendants' "roster [also] includes hip-hop artists . . . Jay Bezzy and Eli Fross.") That Defendants also sell merchandise does not undermine the overlap between their and Plaintiff's music industry-related services. As neither party offers an argument as to geographic proximity of the parties' services, the proximity factor generally favors Plaintiff.

### D. Bridge the Gap

The "bridging the gap" factor requires the Court to consider "the likelihood that the plaintiff will enter the market occupied by the defendant's product to compete against the defendant." *Streetwise*, 159 F.3d at 743. Because this factor is predominantly subsumed by the assessment of competitive proximity, it is not particularly relevant as an individual factor. *See id.* (noting that "bridging the gap" is "subsumed by . . . the competitive proximity of the products, and thus is not relevant as an individual factor"). Even if the Court were to weigh this factor, it would prove relatively neutral. The parties predominantly operate within the same space, such that there is no grand "gap" to bridge. Further, Plaintiff pleads no facts suggesting that he intends to enter the merchandising space that Defendants occupy. Accordingly, this factor favors neither party.

### E. Actual Confusion

For purposes of the Lanham Act, actual confusion means "consumer confusion that enables a seller to pass off his goods as the goods of another." *W.W.W. Pharm. Co.*, 984 F.2d at 574. To show actual confusion, a plaintiff must show that defendants could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation. *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir.1991)). Defendants argue that Plaintiff fails to plead actual confusion. (Defs.' Mem at 22.) Specifically, Defendants assert that the instances of purported actual confusion cited in the Complaint do not exemplify the type of confusion that the Lanham Act was designed to restrain – that which impacts purchasing decisions. The Court agrees. *See Lang*, 949 F.2d at 583 ("[T]he relevant confusion is that which affects "the purchasing and selling of the goods or services in question") (citation omitted).

11

In this case, Plaintiff fails to plead actual confusion. Instead, Plaintiff's examples reflect: (1) an attorney attempting to contact Defendants regarding a business transaction; (2) a music producer attempting to contact Defendants regarding a placement[5] that the producer and one of Defendants' principals produced in 1999; and (3) an award company attempting to contact Defendants regarding a plaque for one of Defendants' records. (Am. Compl. ¶¶ 35–37.) None of these instances reflects that a consumer, intending to purchase services of one party, is at risk of purchasing the services of the other. The examples that Plaintiff cites are not unlike those in *Two Hands*, where the Court determined that the plaintiff's allegations of inquiries regarding "whether the plaintiff sells [defendant's products] and what type, and numerous instances of the defendant's customers mistakenly tagging the plaintiff on social media as the source of their food" were insufficient to plead actual confusion. 563 F. Supp. 3d at 306–07. Plaintiff's conclusory assertion that the prosecution of some of Defendants' founders and affiliates, who have been called "Winners Circle" in the press, has caused Plaintiff to be "associat[ed]" with "heinous crimes" (Am. Compl. ¶ 45) is groundless and therefore unpersuasive. And Plaintiff's unsupported assertion that "executives in the music industry" have advised him that there is "significant confusion" (*id.* ¶ 38) between his and Defendants companies is similarly unavailing. Plaintiff has not identified a single instance in which the alleged association with Defendants has tangibly impacted the reputation of his business. Accordingly, this factor favors Defendants.

### F. Bad Faith

In assessing whether a defendant acted in bad faith, a court "looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and

---

[5] The Court takes judicial notice that "[i]n the music production world, a 'placement' [refers to] creat[ing] a beat and then sell[ing] it to another party for exclusive rights." *See* Illmind, *How Do I Get More Beat Placements* (last visited January 11, 2025), https://djbooth.net/features/2018-03-20-beat-placements-moab-series.

12

goodwill and any confusion between his and the senior user's product." *Lang*, 949 F.2d at 583 (citation omitted). The Complaint is utterly of devoid of any facts supporting a conclusion that Defendants acted with bad faith. Plaintiff only states that Defendants were aware of Plaintiff's marks before adopting their own marks. (Am. Compl. ¶ 58.) Even taken as true, Defendants' awareness is not commensurate with Defendants' will or intent. *See Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 388 (S.D.N.Y. 2008) ("The Second Circuit has suggested that evidence on this *Polaroid* factor is insufficient when it solely demonstrates that a defendant was aware of a plaintiff's marks before proceeding to use its own modified version"). Accordingly, this factor favors Defendants.

### G. Quality of Products

Generally, the quality of products is weighed as a factor when there is an allegation that a low-quality product is taking unfair advantage of the public goodwill earned by a well-established high-quality product. *Gruner*, 991 F.2d at 1079. Because Plaintiff makes no argument with respect to the quality of Defendants' services, this *Polaroid* factor favors Defendants.

### H. Sophistication of Consumers

In assessing the sophistication of consumers, the Court must consider "the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods . . ." *W.W.W. Pharm. Co.*, 984 F.2d at 575 (citations omitted). Defendants argue that this factor weighs in their favor because Plaintiff's clientele consists of a sophisticated group that can distinguish between music industry participants when making purchasing decisions. (Defs.' Mem. at 24.) In response, Plaintiff merely states that the parties share identical consumer

13

groups. (Pl.'s Opp'n at 9.) Of course, this argument says nothing about the sophistication of these consumer groups. And, Plaintiff fails to plead that his consumers are indeed sophisticated but states only that his clientele consists of "consumers of music production and music publishing services." (Am. Compl. ¶ 28.) Thus, even assuming Plaintiff's pleadings are true, this factor favors Defendants.

\*     \*     \*

In sum, only one factor, proximity of the products, weighs in Plaintiff's favor. Of the remaining factors, one, the extent to which Plaintiff may bridge the gap in commerce, is neutral, and all others favor Defendants. Beyond the number of factors that favor each party, the Court finds it unlikely that the parties' marks would cause consumers to confuse Plaintiff's services with those of Defendants. Accordingly, Plaintiff's claims as to the registered "Winners Circle Music" mark are dismissed.

## II. Unregistered "Winners Circle" Marks

Defendants argue that the Court should dismiss Plaintiff's claims as to the unregistered Winners Circle marks because Plaintiff lacks exclusive protectible rights over "Winners Circle." (Defs.' Mem. at 9–11.) The Court agrees. In assessing whether a mark is entitled to protection, a court considers the same factors that it does in determining the strength of a mark under the likelihood of confusion prong, *supra* Section I.A: inherent and marketplace distinctiveness. *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995) ("A court's inquiry regarding the strength of a mark often parallels the inquiry concerning the mark's [protectability], inasmuch as the strength or distinctiveness of a mark determines both the ease with which it may be established as a valid trademark and the degree of protection it will be accorded.") (citation and internal quotation marks omitted).

14

As a threshold matter, Plaintiff's objective is transparent – his purported claims over various "Winners Circle" marks are born of an effort to corner the standalone term "winners circle." To this point, the supposed marks over which Plaintiff asserts protection are not altogether clear. Plaintiff alleges that his "portfolio" of trademarks includes "Winners Circle Publishing," "Winners Circle Publishing WC & design," and "Winners Circle Music & Publishing." (Compl. ¶ 2.) But, in advancing his claims, Plaintiff only makes generalized references to an amorphous group of marks that have the term "winners circle" in common. (*See id.* ¶¶ 2, 18 (alleging that he has been using the "names and marks" since 2011 without clarifying which marks)); *see also id.* ¶ 7 (alleging that Defendants use "names so similar to and evocative of Plaintiff's Winners Circle [m]arks" without specifying a mark). Indeed, as Defendants aptly argue, Plaintiff "lumps together" the Winners Circle marks to imply that his use of these marks establishes an exclusive right over the term "winners circle." (Defs.' Mem. at 9.) Not so. Courts have repeatedly rejected attempts to use marks with multiple components to capture a common component of those marks that was either generic or descriptive without secondary meaning. *See, e.g.*, *MidCap Business Credit, LLC v. MidCap Financial Trust*, No. 21-cv-7922, 2022 WL 684756, at *1 (S.D.N.Y. Mar. 8, 2022), *aff'd in part, vacated in part, remanded*, No. 22-cv-713, 2022 WL 17175400 (2d Cir. Nov. 23, 2022) (dismissing plaintiff's trademark infringement claims as to "MidCap" and unregistered "MidCap" marks because "plaintiff cannot bootstrap a claim based upon its rights in "MidCap Business Credit" into a claim based upon the lesser included "MidCap""); *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1042 (2d Cir. 1980) (holding that the owner of the registered trademark "Saratoga Vichy" could not

15

prevent another party from using "Saratoga Geyser" unless it could prove that "Saratoga" alone had acquired a secondary meaning referring to its product).[6]

Here, neither the unregistered "Winners Circle" marks nor the standalone term "winners circle" are any more distinct than the registered "Winners Circle Music" mark, which the Court found merely descriptive and without secondary meaning in the marketplace. *See supra* Section I.A. Notably, Plaintiff does not protest Defendants' argument regarding this designation as to the unregistered marks. Nor does Plaintiff come close to plausibly alleging secondary meaning. To put it plainly, Plaintiff cannot assert monopoly over terms that comprise common language. *See MidCap*, 2022 WL 684756, at *1. What Plaintiff seeks to protect is not a mark, but a brand. The law does not afford such protection. Accordingly, Plaintiff's claims as to the unregistered "Winners Circle" marks and standalone term "winners circle" are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's claims is GRANTED in its entirety.

SO ORDERED.

Dated: January 24, 2025  
      Brooklyn, New York

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

---

[6] *See also UMG Recordings, Inc. v. OpenDeal Inc.*, No. 21-cv-9358, 2022 WL 2441045, at *5 (S.D.N.Y. July 5, 2022) (holding that plaintiff's registered trademark in "Republic Records" did not translate into rights in "Republic" without proof of secondary meaning); *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 312 (S.D.N.Y. 2000) (holding that a counterclaimant's trademark rights in "Paco Rabanne" did not confer it protection to the standalone term "Paco" absent secondary meaning).